UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) UNITED STATES OF AMERICA and <br> 2) STATE OF OKLAHOMA, <br><br> Plaintiffs, <br><br> v. <br><br> 1) THE DOE RUN RESOURCES CORPORATION and <br><br> 2) NL INDUSTRIES, INC., <br><br> Defendants. | Civil Action No. 4:15-cv-00663-CVE-TLW |

## COMPLAINT

Plaintiffs, the United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Oklahoma (the "State"), acting on behalf of the Oklahoma Department of Environmental Quality ("ODEQ"), files this complaint and alleges as follows:

## INTRODUCTION

1. This is a civil action under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, for recovery of costs that have been incurred by the United States and the State for remedial, investigative, enforcement, and other response actions undertaken in connection with releases and threatened releases of hazardous substances at and from the Tar Creek Superfund Site (hereinafter the "Site") located in Ottawa County, Oklahoma and Treece, Kansas.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter and the parties hereto pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue lies in the Northern District of Oklahoma under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391, because these claims arise in connection with a release and threat of release of hazardous substances which has occurred in Ottawa County, Oklahoma, in this judicial district and in connection with property which is located within Ottawa County, Oklahoma, in this judicial district.

## DEFENDANTS

4. Defendant The Doe Run Resources Corporation (hereinafter "Doe Run") is a New York corporation.

5. Doe Run is the successor in interest to Kansas Explorations, Inc. and the St. Joseph Lead Company.

6. On May 8, 1923, Kansas Explorations, Inc., was incorporated as a stock corporation pursuant to the Business Corporations Law of the State of New York. Shortly after its incorporation, Kansas Explorations became a wholly-owned subsidiary of St. Joseph Lead Company.

7. In 1954, St. Joseph Lead Company acquired the assets of Kansas Explorations and expressly assumed all liabilities of Kansas Explorations, Inc. which was dissolved.

8. St. Joseph Lead Company, and, therefore, Doe Run, is liable for the acts and omissions of Kansas Explorations, Inc., a New York corporation.

9. Kansas Explorations, Inc., leased property at the Site upon which it conducted mining or milling operations at various times during the period from about 1927 to about 1954. Mining or milling operations conducted on the Site by Kansas Explorations produced tailings and other wastes containing, lead, zinc and other hazardous substances that were disposed of at the Site.

10. Kansas Explorations, Inc., sent crude ore to be concentrated at mills owned and operated by other mining companies located beyond its lease boundaries. Kansas Explorations, Inc. arranged for the disposal, at these mills, of the lead-, cadmium-, and zinc-contaminated tailings produced from the concentration of its crude ore at these mills.

11. Defendant NL Industries, Inc. (hereinafter "NL"), is a New Jersey Corporation.

12. NL is the successor corporation to the National Lead Company as of 1971.

13. The National Lead Company was comprised of several regional subsidiary companies including the St. Louis Smelting and Refining Company. Subject to a reasonable opportunity for further investigation and discovery, St. Louis Smelting and Refining Company became a division of the National Lead Company in or around 1948.

14. St. Louis Smelting and Refining Company leased property at the Site upon which it conducted mining or milling operations at various times during the period from about 1917 to about 1944. Mining or milling operations conducted on the Site by St. Louis Smelting and Refining Company produced tailings and other wastes containing, lead, zinc and other hazardous substances that were disposed of at the Site.

15. Defendants NL and Doe Run, and Kansas Explorations, Inc., and St. Louis Smelting and Refining Company are all "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## BACKGROUND

16. The Site is an approximately 40-square-mile area primarily located in Ottawa County, Oklahoma. The Site also includes the location of the now largely abandoned town of Treece, Kansas. The Site was once part of one of the largest lead and zinc mining and milling operations in the world. The Site includes the Oklahoma portion of a former lead and zinc mining area (Picher Mining Field), also known as the Tri-State Mining District. The principal communities located within the Site are Commerce, Quapaw, and North Miami, Oklahoma. The former locations of Picher, and Cardin, Oklahoma, and the former location of Treece, Kansas, are also part of the Site. The residents of these former communities have been relocated.

17. Mining operations began near Quapaw and Commerce on the Site in the late 1800's. Such operations included the milling or processing of raw ore to obtain the lead and zinc concentrate. The bulk of the ore output of the Tri-State District came from the Picher Mining Field which reached maximum production in the 1920's. While there were significant periods of lower mining activity because of reduction in metal prices, some mining in Ottawa County occurred more or less continuously until the 1950's. Smaller operations continued sporadic mining in the Picher Mining Field area until the 1970's.

18. The milling of ore at the Site produced millions of cubic yards of waste referred to as tailings or "chat." The term chat generally means gravel-like tailings intermingled with finer dust-like or sand-like materials and which contained zinc, cadmium

and lead. During mining, the chat was typically disposed of in a pile (a "chat pile") on the Site by means of an elevator or a belt conveyor. Some of the chat piles were about 200 feet high. A total of about 83 chat piles covering an area of about 767 acres and having a volume of approximately 31 million cubic yards remain on the Site.

19. As the result of mining operations, there were also chat bases left on the Site. Chat bases are areas once occupied by chat piles and they contain lead, cadmium and zinc. There are about 243 chat bases with a total estimated volume of 6.71 million cubic yards of chat and which cover an area of approximately 2,079 acres on the Site.

20. Mining operations at the Site also produced fine tailings containing lead, zinc and cadmium that were disposed of at the Site. There were two types of fine tailings produced: (1) fine tailings produced from flotation milling (a milling process put into use on the Site in or about 1924), and (2) fine tailings generated as a waste during the washing of chat. During the flotation process, fine tailings were typically pumped as a slurry to a flotation pond on the Site where the water was recycled to the mill after the fine tailings had settled to the bottom of ponds. After termination of milling operations, the dikes of some of the ponds were breached allowing the water to drain out, and other ponds were allowed to evaporate, leaving behind fine tailings. In addition, fine tailings produced from chat washing were also disposed of at the Site. Approximately 1.95 million cubic yards of flotation tailings and 7.21 million cubic yards of washed fine tailings are on the Site, all containing lead, cadmium and zinc. There are a total of about 63 fine tailings ponds at the Site covering a total area of about 820 acres.

21. The Site poses a risk to human health and the environment. The releases or threatened releases of hazardous substances resulted in the Tar Creek Site being placed on the

National Priorities List ("NPL").  See Section 105(a)(8) of CERCLA, 42 U.S.C. § 9605(a)(8); 48 Fed. Reg. 40,667 (September 8, 1983); 40 C.F.R. Part 300, App. B (2007).

## EPA's Response Actions

22.     The operations of Kansas Explorations, Inc., and St. Louis Smelting and Refining Company at the Site resulted in lead-, cadmium-, and zinc-contaminated tailings being discharged, deposited, dumped, spilled, leaked, placed, discarded and/or otherwise disposed of into the surface soil and surface water at the Site.

23.     As the result of the release or threatened release of hazardous substances, EPA, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has undertaken and is undertaking response actions with respect to the Tar Creek Site, including investigating, monitoring, surveying, testing, removing and remediating hazardous substances.

24.     Based upon the work to be performed or problems presented at the Site, EPA is addressing the Site in phases referred to as operable units ("OU").  There are five OUs at the Site, and EPA has issued a Record of Decision ("ROD") for OU1, OU2 and OU4.  The first operable unit, OU1, addressed problems associated with acid mine drainage and the threat to a groundwater aquifer located beneath the Site (OU1 is not a subject of this complaint).  OU2 addressed lead contamination in the soils of the residential and high access areas (*i.e.,* places that are frequented by children) of the Site.  Pursuant to EPA's response action at OU2, approximately 3,000 residential yards, day care centers, schools and parks were remediated. OU3 was a removal action that addressed a contaminated building used during mining operations at the Site (OU3 is not a subject of this complaint).  OU4 concerns the undeveloped urban and rural areas of the Site where mining operations took place and addresses, among other things, chat piles and bases, contaminated soils and tailings ponds.

OU5 concerns contamination in sediments in waterways flowing through and downstream of the Site.

25. OU4 generally consists of the non-residential areas, both urban and rural, where the mining companies conducted their operations at the Site, and where mine and mill tailings and other wastes have been deposited, stored, disposed of, released, placed, or otherwise come to be located as a result of mining, milling or related operations. The mine or mill tailings are contaminated with lead, cadmium and zinc. Soil in areas near chat piles, chat bases, fine tailings and other waste locations is also contaminated with lead, cadmium and zinc.

26. As the result of the release or threatened release of hazardous substances at the Site, the United States and the State have incurred unrecovered costs of approximately $331 million as of June 30, 2015, for response costs related to OU2, OU4, and OU5 of the Site not including interest. The United States and the State continue to incur response costs at the Site.

27. The response actions undertaken and response costs incurred by the United States and the State in connection with the Site are not inconsistent with the National Oil and Hazardous Substance Pollution Contingency Plan ("National Contingency Plan"), 40 C.F.R. Part 300, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, including any amendments thereto.

## CLAIM FOR RELIEF

28. The allegations in paragraphs 1 through 27 are realleged and incorporated herein by reference.

29. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

30. Kansas Explorations, Inc., and St. Louis Smelting and Refining Company, conducted operations at the Site at the time of disposal of hazardous substances, and are operators of a facility at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

31. Defendant Doe Run is liable under CERCLA for the acts and omissions of Kansas Explorations, Inc., and is a person who was an owner and/or operator of a facility at the time of the disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and who arranged for the disposal of hazardous substances within the meaning of CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

32. Defendant NL is liable under CERCLA for the acts and omissions of St. Louis Smelting and Refining Company and is a person who was an owner and/or operator of a facility at the time of the disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

33. There have been releases or threatened releases of hazardous substances into the environment at and from the Site, including the part of the Site that includes the mining leases owned or operated by Kansas Explorations, Inc. and St. Louis Smelting and Refining Company, within the meaning of Sections 101(14) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(14) and (22).

34. Lead, cadmium and zinc are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

35. The United States has undertaken and may undertake response actions in the future at the Site at OU2, OU4 and OU5 in response to releases or threatened releases of

hazardous substances within the meaning of Sections 101(25), 104 and 107 of CERCLA, 42 U.S.C. §§ 9601(25), 9604 and 9607.

36. As a result of the releases or threatened releases of hazardous substances at or from the Site at OU2, OU4 and OU5, the United States and the State have incurred response costs within the meaning of Section 101(25), 42 U.S.C. § 9601(25), and as used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and will continue to incur costs at the Site. The United States and the State seek to recover their response costs incurred to date at the Site from the Defendant Doe Run pursuant to CERCLA Sections 107(a)(2) and (3), 42 U.S.C. §§ 9607(a)(2) and (3), and Defendant NL pursuant to CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2), as well as all future costs.

37. At present, the United States and the State have incurred and paid approximately $331 million in response costs at or in connection with OU2, OU4 and OU5 of the Site, and the United States and the State continue to incur additional response costs at or in connection with the Site.

38. The response actions undertaken and response costs incurred by the United States and the State in connection with the Site are not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.

39. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the United States and the State are entitled to recover interest on the response costs which it has incurred, or which it may incur in the future, at the Tar Creek Site.

40. Defendants are liable to the United States and the State for the costs of response actions incurred and to be incurred at the Site by the United States and the State pursuant to

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and are liable to the State under 27A Okla. Stat. § 1-3-101(8)(1).

41. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, the United States and the State also seek a declaratory judgment that the Defendants shall be liable for any response costs incurred by the United States in the future with respect to the Site.

42. Defendants Doe Run and NL are liable to the United States and the State for costs, plus interest, which are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, because Defendants are persons who were operators of a facility at the time of the disposal of hazardous substances within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

43. Defendant Doe Run is liable to the United States and the State for costs, plus interest, which are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, because Defendant is a person who arranged for the disposal of hazardous substances at a facility within the meaning of CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that this Court:

(a) Enter judgment in favor of the United States and the State against the Defendants for reimbursement of costs incurred and paid by the United States and the State in responding to releases or threatened releases of hazardous substances at the Site, plus the costs of investigation and enforcement related to such releases and this suit, plus prejudgment interest;

(b) Enter a declaratory judgment in favor of the United States and the State holding the Defendants liable for all additional costs incurred or to be incurred by the United States and the State in connection with the Site;

(c) Award the United States and the State their enforcement costs, and

(d) Grant such other and further relief as the Court may deem just and proper.

Dated: November 20, 2015

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General

Environment and Natural Resources Division
U.S. Department of Justice

SAMUEL D. BLESI
Trial Attorney
D.C. Bar # 417818
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-1466
Sam.Blesi@usdoj.gov

DANNY C. WILLIAMS, SR.
United States Attorney
Northern District of Oklahoma

11

                                    s/ Cathryn D. McClanahan  
                                    CATHRYN D. McCLANAHAN, OBA No. 14853  
                                    Assistant United States Attorney  
                                    110 West 7th Street, Suite 300  
                                    Tulsa, Oklahoma 74119  
                                    T: 918-382-2700  
                                    cathy.mcclanahan@usdoj.gov

OF COUNSEL:

JAMES E. COSTELLO
Practice Group Leader
Superfund Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave, Suite 1200
Dallas, TX 75202-2733
costello.james@epa.gov

                                                **STATE OF OKLAHOMA**

                                    s/ P. Clayton Eubanks  
                                    P. Clayton Eubanks  
                                    Deputy Solicitor General  
                                    Oklahoma Attorney General's Office  
                                    313 N.E. 21st Street  
                                    Oklahoma City, OK 73105