# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| 1) **UNITED STATES OF AMERICA and** | ) | |
| 2) **STATE OF OKLAHOMA** | ) | |
|  | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Civil Action No. 4:15-cv-00663-CVE-TLW** |
|  | ) | **Judge Claire V. Eagan** |
| 1) **THE DOE RUN RESOURCES CORP.** | ) | |
| **and** | ) | |
| 2) **NL INDUSTRIES, INC.** | ) | |
| **Defendants.** | ) | |

## UNITED STATES' RESPONSE TO MOTION TO INTERVENE BY ASARCO LLC

**Table of Contents**

I.   INTRODUCTION ................................................................................................................ 1

II.  SUMMARY OF ARGUMENT ........................................................................................... 2

III. BACKGROUND ................................................................................................................. 5

   A.  The Site ........................................................................................................................ 5

   B.  CERCLA Liability Scheme: Claims Under Sections 107 and 113 of CERCLA ................ 6

   C.  Prior Settlements Concerning CERCLA Liability for the Tar Creek Site ......................... 7

   D.  Mining Operations by Doe Run and NL at the Site ............................................................. 9

   E.  Asarco's Operations at the Site and Settlement with the United States and the
       State of Oklahoma ........................................................................................................ 10

IV.  ARGUMENT ..................................................................................................................... 12

   A.  Intervention As of Right .................................................................................................. 12

   B.  Even Where Intervention is Appropriate the Court May Impose Conditions or
       Restrictions to Minimize Delay ...................................................................................... 13

   C.  Asarco's Participation in This Case Should Be Limited to Filing Briefs Regarding the
       Proposed Settlement ....................................................................................................... 16

   D.  Asarco's Alternative Request for Permissive Intervention is Moot ................................. 18

V.   CONCLUSION .................................................................................................................. 19

## Table of Authorities

<u>Cases</u>

*Asarco, LLC v. Noranda Mining, Inc.*, Case No. 2:12-CV-527-TC-DBP,
  2016 U.S. Lexis 41532 (D. Utah March 29, 2016).....................................................................12

*Arizona v. City of Tucson,* 761 F.3d 1005 (9th Cir. 2014)..............................................................14

*Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351 (5th Cir. 1997) ...........................................13

*Burlington Northern and Santa Fe Railway Co. v. United States*, 556 U.S. 599 (2009) ...........6, 7

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946 (9th Cir. 2013) ...................17. 18

*City of New York v. Exxon Corp.*, 697 F. Supp. 677 (S.D.N.Y. 1988) ....................................14, 15

*Dravo Corp. v. Zuber*, 804 F. Supp. 1182 (D. Neb. 1992) ............................................................14

*In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution,*
  712 F. Supp. 1019 (D. Mass. 1989) ............................................................................................14

*In re: Asarco LLC, et al.*, No. 05-21207 (Bankr. S.D. Tex.) ....................................................8, 10

*In re: Eagle-Picher Industries, et al., Debtors*, 197 B.R. 260 (Bankr. S.D. Ohio 1996). ...........7, 8

*In re: Gold Fields Mining LLC,*  No.16-42561 (Bankr. E.D. Mo.) .................................................9

*In re Tutu Water Wells CERCLA Litig'n*, 326 F.3d 201 (3d Cir. 2003) .............................4, 16, 18

*Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507 (W.D. Mich. 1989) ...........................................14

*San Juan County v. United States*, 503 F.3d 1163 (10th Cir. 2007).............................................13

*Tierce v. The U.S. Baird Corp.*, No. 15-CV-0358, 2015 WL 4105476
  (N.D. Okla. July 7, 2015)............................................................................................................18

*United States v. Aerojet General Corp.*, 606 F.3d 1142 (9th Cir. 2009) ........................................14

*United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991) .....................4, 16, 18

*United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1396 (10th Cir. 2009) .................1, 2, 12, 13

*United States v. Andruss Family Trust*, 2011 WL 1334391 (C.D. Cal.  Apr. 7, 2011) .................14

ii

*United States v. ASARCO, Inc. et al.*, No. 91 C 263 B (N.D. Okla. 1991) .......................................7

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) ...........................4, 15, 16, 18

*United States v. Charles George Trucking, Inc.*, 34 F.3d 1081 (1st Cir. 1994) ...........................15

*United States v. Childress Royalty Company*, No. 4:14-CV-00633 (N.D. Okla.) ..........................8

*United States v. ExxonMobil Corp.*, 264 F.R.D. 242 (N.D. W. Va. 2010) ...................................17

*United States v, State of Colorado*, 937 F.2d 505, 509 (5th Cir. 2001)....................................4, 16

*United States v. Union Elec. Co.*, 132 F.3d 422 (8th Cir. 1997) ...............................................2, 13

Federal Statutes

42 U.S.C. § 9601(14) .......................................................................................................5

42 U.S.C. § 9604(a) .........................................................................................................6

42 U.S.C. § 9607(a) ..................................................................................................1, 3, 6

42 U.S.C. § 9613(i) ....................................................................................................1, 13

42 U.S.C. § 9613(f)...........................................................................................................9

42 U.S.C. § 9613(f)(1) ................................................................................................7, 16

42 U.S.C. § 9613(f)(2) ................................................................................................7, 12

42 U.S.C. § 9613(f)(3)(A).................................................................................................12

42 U.S.C. § 9613(f)(3)(B)...................................................................................................7

42 U.S.C. § 9613(f)(3)(C)...........................................................................................7, 12

42 U.S.C. § 9613(g)(2) ....................................................................................................11

42 U.S.C. § 9622.................................................................................................................1

42 U.S.C. § 9622(f)(6) .............................................................................................1, 9, 12

Federal Regulations

28 C.F.R. § 50.7 .................................................................................................................1

<u>Federal Rules</u>

Fed. R. Civ. P. 24(a) ...............................................................................................................1, 13

Fed. R. Civ. P. 24(b) ...................................................................................................................18

## Index of Exhibits

| <u>Attachment #</u> | <u>Description</u> |
|---|---|
| 1 | Declaration of Casey Luckett Snyder, dated April 18, 2016 (with excerpt of OU4 ROD as an attachment thereto). |
| 2 | First Amended Proffer of Donald Robbins in Support of the Debtor's Settlement with Respect to the Tri-States Mining District Sites, *In re: ASARCO LLC, et al.*, No. 05-21207 (Bankr. S.D. Tex. Nov. 13, 2007) (Rec. Doc. 6265). |

## I.      INTRODUCTION

The United States responds to ASARCO LLC's Motion to Intervene (Dkt. 8) (hereafter "Motion") filed pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") Section 113(i), 42 U.S.C. § 9613(i), and Fed. R. Civ. P. 24. ASARCO LLC (hereafter "Asarco") seeks to oppose the proposed Consent Decree lodged with the Court.  The United States does not oppose Asarco's intervention, but, consistent with the Tenth Circuit's decision in *United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1396 (10th Cir. 2009), requests that the Court limit Asarco's participation solely to briefing its opposition to entry of the proposed Consent Decree, with concomitant appellate rights, and not allow Asarco discovery or an evidentiary hearing.  These conditions are appropriate because, should the United States file any motion to enter the proposed Consent Decree now lodged with the Court, the issue before this Court will be whether the settlement with The Doe Run Resources Corporation ("Doe Run") and NL Industries, Inc. ("NL") (collectively "Defendants") is fair, reasonable and consistent with the purposes of CERCLA – not whether Asarco paid an appropriate share in its prior settlement.

On November 20, 2015, the United States, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Oklahoma (collectively "Plaintiffs') filed a Complaint alleging that defendants Doe Run and NL are liable for costs incurred or to be incurred by Plaintiffs in cleaning up the Tar Creek Superfund Site in Ottawa County, Oklahoma (the "Site"), pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Simultaneously, the United States lodged a proposed Consent Decree among the Plaintiffs and Defendants settling the claims in this action.

Consistent with Section 122 of CERCLA, 42 U.S.C. § 9622, 28 C.F.R. § 50.7 and Paragraph 39 of the proposed Consent Decree, the Consent Decree is subject to a public notice

1

and comment procedure.  On December 8, 2015, the United States published notice of the

Consent Decree in the Federal Register which opened a 30-day public comment period.  *See* 80

Fed. Reg. 76313 (December 8, 2015).  During the 30-day comment period, the United States

received 28 comments on the proposed Consent Decree, including comments from several

Tribes.  Asarco did not file any comments during the public comment period.  The United States

is in the process of reviewing and considering these comments.  After it completes its review, it

will prepare a response to the comments and file an appropriate motion regarding the proposed

Consent Decree.

On March 28, 2016, after the public comment period had closed, Asarco filed its Motion

with a proposed Complaint in Intervention (Dkt. 8-1).  Asarco seeks intervention in order to

oppose the proposed Consent Decree and to protect its asserted contribution rights against Doe

Run and NL.  *See* Motion at 4.  If approved and entered by the Court, the lodged Consent Decree

would not only resolve Plaintiffs' claims against Doe Run and NL, but, by operation of

applicable provisions of CERCLA would also cut off and thereby resolve Asarco's contribution

claims against Doe Run and NL.

## II.      SUMMARY OF ARGUMENT

As noted above, the United States does not oppose Asarco's intervention, but, as

specifically authorized by the 10th Circuit in *Albert Inv.*, 585 F.3d at 1396, asks the Court to

limit Asarco's participation solely to briefing its opposition to entry of the proposed Consent

Decree, with concomitant appellate rights, and not allow Asarco discovery or an evidentiary

hearing.  S*ee also United States v. Union Elec. Co*., 132 F.3d 422, 430 (8th Cir.1997) (finding no

abuse of discretion to deny evidentiary hearing for CERCLA intervenors where they "had ample

opportunity to file objections to the Proposed Consent Decree" which the court considered).

As explained below, Plaintiffs' action before this Court is one of a series of actions related to claims of the United States under Section 107(a) of CERCLA at the Site. The United States has already fully settled the CERCLA liability of three other mining companies, including Asarco, for EPA's response costs claims for the Site. In an earlier bankruptcy proceeding, Asarco resolved its liability under CERCLA to the United States for the Site based upon EPA's past and estimated future costs of remediating contamination within, or otherwise attributable to, its former areas of operations at the Site. Asarco received a CERCLA covenant not to sue from the United States and the State and, with limited exceptions, by operation of CERCLA statutory provisions it received protection from the contribution claims of third parties with respect to the Site.

In this action, Plaintiffs have lodged a proposed Consent Decree between Plaintiffs and Defendants Doe Run and NL that will, if approved by this Court, resolve their CERCLA liability for the Site. The settlement amounts are based upon EPA's past and estimated future costs of remediating contamination within, or otherwise attributable to, their former areas of operations at the Site. As explained below, Doe Run's and NL's historic mining leaseholds where they conducted operations at the Site were distinct from and did not overlap with Asarco's historic mining leaseholds where it conducted operations.

Significantly, if a motion to enter the proposed Consent Decree is filed, the primary issue before this Court will be whether Doe Run and NL Industries are paying an appropriate amount to resolve these CERCLA liabilities at this Site. The issue of the validity of Asarco's assertion that, in hindsight, it overpaid when it settled with the United States in 2008, is, at best, only secondarily relevant to the issue before this Court. The case law is clear that the issue before the

Court will be whether Doe Run and NL are paying an appropriate r share under the terms of this settlement.

Similar to other types of settlements, Courts typically consider motions to enter a CERCLA Consent Decree without any discovery or evidentiary proceedings. Ultimately, this Court's consideration of the proposed settlement between the United States and Defendants will turn on the Court's determination, with substantial deference to the United States' position in this regard, whether the Consent Decree is fair, reasonable, and consistent with the purposes of CERCLA. *See, e.g., United States v, State of Colorado,* 937 F.2d 505, 509 (10th Cir. 2001)*;United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (citations omitted). "[E]videntiary hearings are not required under CERCLA when a court is merely deciding whether monetary settlements comprise fair and reasonable disposition of Superfund claims." *Cannons Eng'g*, 899 F.2d at 94.

Here, the United States urges the Court to protect the benefits of the settlement to the settling parties by limiting Asarco's intervention to briefing its opposition, if and when the United States moves to enter the proposed Consent Decree, without permitting any discovery or evidentiary hearing. Many other courts have done so, as noted below, and such conditional intervention is particularly justified here where this and prior settlements are crafted based on the particular parties' contributions to the harm at the Site. Should the United States move for entry of the proposed Consent Decree after considering public comment, these conditions would ensure that there is no substantial delay in consideration of any motion to enter and ensure that the benefits of the proposed settlement to the settling parties, including avoidance of the costs and burdens of litigation and discovery, are not undone by the intervention. Such limitations

would sufficiently protect Asarco's stated interests, while still preserving CERCLA's strong policy in favor of settlements.

## III.   BACKGROUND

### A.   The Site

The Site is an approximately 40 square mile area located primarily in Ottawa County, Oklahoma that, from the late 1800s through about 1970, was part of one of the largest lead and zinc mining and milling locations in the world.  Hundreds of mining companies conducted operations on discrete properties under separate mining leases.  Some leaseholds changed hands such that multiple mining companies may have operated on the same leasehold over time.  Only a few of the mining companies, or their successors or affiliates, still exist.  A brief description of the history of mining operations at the Site is set forth in EPA's Record of Decision Operable Unit 4, dated February 20, 2008 (OU4 ROD), at pp. 5-6.[1]  *See* April 18, 2016 Declaration of Casey Luckett Snyder (attachment 1), and the OU4 ROD excerpt attached as an exhibit thereto.

The milling of ore at the Site produced millions of cubic yards of tailings waste left on the Site.  These tailings are generally of two types - gravel-like tailings called "chat," and fine sand-like or powder-like tailings called "fines" or "fine tailings."  This waste is contaminated with lead, cadmium and zinc.  Much of the chat is contained in huge chat piles that are physically separated from one another, sometimes by miles.  There are also chat bases (the remnants of a chat pile) and fine tailings remaining in various areas of the Site.  *See* OU4 ROD at pp. 5-7.  Lead, cadmium, and zinc are "hazardous substances" as that term is defined in § 101(14) of CERCLA, 42 U.S.C. § 9601(14).

---

[1] Record Of Decision Operable Unit 4 Chat Piles, Other Mine And Mill Waste, And Smelter Waste Tar Creek Superfund Site, Ottawa County, Oklahoma (February 20, 2008)

As the result of the release or threatened release of hazardous substances at the Site, EPA, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has undertaken and is undertaking response actions with respect to the Site, including investigating, monitoring, surveying, testing, removing and remediating hazardous substances. *Id.,* ¶¶ 16-18.  EPA is addressing the Site in separate phases, and each is referred to as an operable unit ("OU").[2]  The United States has incurred response costs and will continue to incur response costs at the Site.  The United States has sought recovery of its past and estimated future response costs from seven mining companies based on their historic mining activities, or the activities of their predecessors in interest or affiliates:  Eagle-Picher Industries, Inc., Asarco LLC, Childress Royalty Company, Doe Run, NL, Blue Tee Corporation and Gold Fields Mining LLC.

## B.    CERCLA Liability Scheme: Claims Under Sections 107 and 113 of CERCLA

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part that: "(1) the owner or operator of . . . facility, [and] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for  – (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; . . . ."  Liability under Section 107 is strict, and in the absence of proof of divisibility of harm, is joint and several.  *See Burlington*

---

[2] There are five OUs at the Site, and EPA has issued Records of Decision ("ROD") for OU1, OU2 and OU4 that explain the remedies selected for those OUs. OU1 addressed problems associated with acid mine drainage and the threat to a groundwater aquifer located beneath the Site. OU2 addressed lead contamination in the soils of residential and high access areas (*i.e.,* places that are frequented by children) of the Site. OU3 was a removal action that addressed a contaminated building used during mining operations at the Site. OU4, which is currently being implemented by EPA, concerns the undeveloped urban and rural areas of the Site where mining operations took place and addresses, among other things, chat piles and bases, contaminated soils and tailings ponds. OU5 concerns contamination in sediments and surface waters in waterways flowing through and downstream of the Site. EPA's investigation for OU5 is ongoing and no remedy has yet been selected. *See* OU4 ROD at pp. 5-7.

*Northern and Santa Fe Railway Co. v. United States*, 556 U.S. 599, 608, 613-15 (2009).  Hence, the United States has pursued enforcement under Section 107(a) against mining companies that owned or operated at the Site and contributed to the contamination there.  As described below, those actions to date have resulted in judicially approved settlements.

Section 113(f)(1) and (f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(1) and (f)(3)(C), provide a right of contribution among liable parties, including those who resolve their liability with the United States.  "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).  But Section 113(f)(3)(C) of CERCLA provides that the contribution rights of parties who have previously resolved their liability to the United States are subordinate to the rights of the United States.  Finally, Section 113(f)(2) of CERCLA provides that any party "who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."  In other words, parties who settle with the United States are generally entitled to contribution protection for matters addressed in the settlement.

### C.  Prior Settlements Concerning CERCLA Liability for the Tar Creek Site

The United States has previously settled the full CERCLA liability of three mining companies for the Site.[3]  The first of these settlements was with Eagle-Picher Industries, Inc. which filed for bankruptcy protection in the Southern District of Ohio and resolved the United States' proof of claim with respect to the Tar Creek Site through a settlement approved by the bankruptcy court in 1996.  *See In re Eagle-Picher Industries, et al., Debtors*, 197 B.R. 260

---

[3] The United States also entered into a 1991 consent decree with several of the same mining companies styled *U.S. v. ASARCO, Inc. et al.*, 91 C 263 B (N.D. Okla. 1991), but that early settlement did not resolve all liability for the Site. So subsequent enforcement action ensued

7

(Bankr. S.D. Ohio 1996).  The second settlement was with Asarco, LLC which filed for bankruptcy protection in 2005 and then resolved the United States' proofs of claim with respect to the Site through a bankruptcy approved settlement in February 2008.  *In re: Asarco LLC, et al.*, No. 05-21207 (Bankr. S.D. Tex.), Settlement Agreement Regarding the Tri-State Mining District Sites, approved February 4, 2008 (attached to Asarco's Motion in Intervention as Dkt. 8-2) (hereafter "Asarco Settlement Agreement").  More recently, the United States settled the liability of Childress Royalty Company in a consent decree approved by this Court on December 15, 2014, in *United States v. Childress Royalty Company*, No. 4:14-CV-00633 (Dkt. 6) (N.D. Okla.).  Each of these settlements provided for a Site-wide covenant not to sue by the United States and state plaintiffs and entitled the settlers to statutory Site-wide contribution protection (subject to certain exceptions in the Asarco Settlement Agreement as noted below).

Because the entire Site covers an area of 40 square miles, and because the mining companies raised credible divisibility defenses to joint and several liability, the United States did not seek in these settlements to hold the mining companies responsible for all contamination at the Site.  Rather, each of these settlements has been based on the mining company's liability for contamination located within, or otherwise attributable to, its discrete areas of operations or ownership at the Site and the costs estimated by EPA to clean up that contamination.  Notably, information provided to EPA by Asarco, Doe Run, NL and other mining companies in a 1995 Joint Response to EPA's 1994 Information Request showed that Asarco's mining leaseholds at the Site did not overlap with the mining leaseholds operated by Doe Run and NL.  S*ee* Luckett Snyder Declaration (attachment 1).

Four remaining mining companies are the subject of ongoing EPA enforcement efforts. Those companies are Doe Run and NL, which are the subject of the proposed Consent Decree lodged with the Court in this action, and Blue Tee Corp. and Gold Fields Mining LLC.[4]

**D.      Mining Operations by Doe Run and NL at the Site**

Defendants Doe Run and NL, through their predecessors in interest, leased properties at the Site where they conducted mining or milling operations at various times from 1917-1960s. In the course of their operations, they disposed of mill tailings containing lead, cadmium, and zinc in the leased areas that they operated.  In certain instances, the historic mining company affiliated with Doe Run sent crude ore and tailings to other mills outside of its leasehold for processing or reprocessing and resulting wastes were disposed at those mills.  *See* Luckett Snyder Declaration.

 In November 2015, the United States lodged its proposed settlement with Doe Run and NL.  As in prior settlements, the United States seeks reimbursement from Doe Run and NL of costs incurred or to be incurred, in connection with remediation of contamination in, or otherwise attributable to, their operations in their respective operating areas at the Site.  If the proposed Consent Decree is approved, EPA expects to use the settlement amounts paid by Doe Run and NL to fund its continuing remediation of the Site.  *See* Luckett Snyder Declaration. Additionally, if the Consent Decree is approved, Doe Run and NL will receive a Site-wide covenant not to sue, subject to a statutory reopener for unknown conditions in accordance with Section 122(f)(6) of CERCLA, and be entitled to Site-wide contribution protection pursuant to Section 113(f) of CERCLA.

---

[4] On April 13, 2016, Gold Fields Mining LLC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Missouri.  *In re Gold Fields Mining LLC*, No.16-42561 (Bankr. E.D. Mo.).

**E.     Asarco's Operations at the Site and Settlement with the United States and the State of Oklahoma**

Asarco also conducted mining and milling operations at the Site, and its operations generated contaminated mill tailings and other wastes containing lead, cadmium, and zinc disposed in the leased areas that it operated.  Asarco's leasehold areas in which it conducted mining operations at the Site did not overlap with the mining operations of Doe Run and NL.  *See* Luckett-Snyder Declaration, attachment 1.  The United States filed a claim in the Asarco Chapter 11 Bankruptcy Proceeding pursuant to Section 107 of CERCLA for response costs incurred, and to be incurred, in connection with the Site, as well as claims with respect to other Asarco liabilities around the country.  *In re: Asarco LLC, et al.*, No. 05-21207 (Bankr. S.D. Tex.).  Asarco resolved its environmental liabilities for claims filed by the United States and various states at sites across the country through a series of settlement agreements.

Asarco acknowledges that it settled its liability to the United States for response costs and natural resource damages related to the Tar Creek Site in a February 2008 judicially approved settlement agreement in the Asarco bankruptcy proceeding.  Motion at 3-4.  Asarco attached to its Motion a copy of the bankruptcy settlement agreement ("Asarco Settlement Agreement") and its motion to the Bankruptcy Court in support of that settlement agreement ("Asarco Settlement Motion").[5]  Like EPA's other settlements at Tar Creek, the Asarco Settlement Agreement was based on EPA's past and estimated future costs of cleaning up the contamination in, or otherwise attributable to, Asarco's operating areas at the Site.[6]  *See* Asarco Settlement Motion.  At the time

---

[5] *See* Declaration of Gregory Evans in Support of Proposed Plaintiff-Intervenor ASARCO LLC's Motion to Intervene ("Evans Declaration")  (Dkt. 8-2), at 2, and attachments thereto: Motion for Order Approving Compromise and Settlement Between ASARCO LLC and Various Governmental Entities Regarding the Tri-State Mining District Sites ("Asarco Settlement Motion") and Settlement Agreement Regarding the Tri-State Mining District Sites ("Asarco Settlement Agreement").

[6] In an affidavit filed with the Bankruptcy Court by Asarco's Director of Environmental Services in support of the Asarco Settlement Motion, Donald Robbins stated that "the settlement agreed to by ASARCO as part of the

10

of the Asarco settlement, EPA had not yet issued the OU4 ROD, so the parties necessarily relied on cost estimates prepared for a bankruptcy estimation hearing.  *See* Asarco Settlement Motion at 4. Asarco settled EPA's response costs claim at the Site for an allowed general unsecured claim of $32,689,800, *see* Asarco Settlement Motion at 4-5,[7] and Asarco represented to the bankruptcy court that the settlement "is reasonable, fair and equitable" and represents "a fair and reasonable resolution of the amount of such claims, in light of the relevant facts relating to the Tri-State." *Id.* at 8.[8] When approving the Asarco Settlement Agreement, the bankruptcy court held that the "Settlement Agreement as amended is fair, reasonable, and consistent with environmental law."  Order Approving Settlement Agreement After Public Comment for the Tri-State Mining District Sites, (attached to Motion at Dkt. 8-2) at 2.  Under the Asarco Settlement Agreement, Asarco received contribution protection, with certain exceptions,[9] in accordance

---

settlement is far closer to the estimates of ASARCO's liability developed by its own experts than to the Government's joint and several liability claims."  First Amended Proffer of Donald Robbins in Support of the Debtor's Settlement with Respect to the Tri-States Mining District Sites.  *See* Dkt. 6265, No. 05-21207 (Bankr. S.D. Tex. November 13, 2007) (attachment 2) at par.55.  As noted in the First Amended Proffer, the United States updated its initial Site-wide claim against Asarco for the Site and reduced it to a claim for response costs attributable to Asarco's operations at the Site.  *See* Table 1 and Table 3 of Proffer.

[7] Under the Asarco Settlement Agreement, Asarco also agreed to resolve the State of Oklahoma's response cost claims for an allowed general unsecured claim of $7,500,000.   Asarco Settlement Motion at 5.

[8]  *See also* First Amended Proffer of Donald Robbins in Support of the Debtor's Settlement with Respect to the Tri-States Mining District Sites, at 19 (attachment 2).

[9]  Significantly, Doe Run, NL, Blue Tee and Gold Fields all filed proofs of claim against Asarco in the Asarco bankruptcy proceeding asserting contribution claims with respect to, *inter alia*, the Tar Creek Site.  The Asarco Settlement Agreement provides Asarco with contribution protection "as provided by Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), except for contribution actions or claims for past costs, up to the date of lodging of this agreement, of Blue Tee Corp., Gold Fields Mining, LLC, or NL Industries, Inc. [and Doe Run] as set forth in their respective proofs of claim and amendments thereto."  Asarco Settlement Agreement, at p. 12, par. 20, and Order Approving Settlement Agreement After Public Comment for the Tri-State Mining District Sites. Attached to Motion as Exhibit C to Evans Declaration at Dkt. 8-2.  Asarco, Blue Tee and Gold Fields have since resolved their claims against the other with respect to the Site in the Asarco bankruptcy proceeding, and those parties gave mutual releases with respect to the Site.  *See* Order Approving Compromise and Settlement Between Asarco LLC, Blue Tee Corporation ad Gold Fields Mining LLP Regrading the Tri-State Mining District Sites.  Dkt. 6586-2, No. 05-21207 (Bankr. S.D. Tex. December 21, 2007).  NL has separately withdrawn its claims against Asarco with respect to the Tar Creek Site.  *See* Stipulation and Order Regarding Withdrawal of Claims Relating to (i) Tri-State Superfund Site (ii) Colorado School of Mines Site and (iii) California Gulch Superfund Site Contained 9in Claim No. 11002 of NL Industries, Inc., Dkt. 8915, No. 05-21207 (Bankr. S.D. Tex. August 26, 2008).

with Section 113(f)(2) of CERCLA, and received a broad covenant not to sue by the United

States and State of Oklahoma for the Site that, unlike the proposed settlement with Doe Run and

NL, did not contain reopener provisions under Section 122(f)(6) of CERCLA for unknown

conditions or information.  *Id*. at 11-12.

Asarco asserts that it is entitled to contribution from Doe Run and NL under Section

113(f)(3)(A) of CERCLA.  Although CERCLA does provide a right of contribution to settling

parties, CERCLA also provides that the contribution rights of parties who have previously

resolved their liability to the United States are subordinate to the rights of the United States,

42 U.S.C. § 9613(f)(3)(C), and thus, the elimination of any contribution rights of initial settlers is

not in violation of any policy of CERCLA.  The United States notes that Doe Run and NL assert

several affirmative defenses to that claim, and to prevail Asarco must prove, *inter alia,* that it

paid more than its fair share in its own settlement with the United States and that Doe Run and

NL have not paid their fair shares relative to Asarco even though the settlements are based on

contamination in, or otherwise attributable to, the companies' respective areas of operations.[10]

## IV.   ARGUMENT

### A.     Intervention as of Right

For purposes of the Motion, the United States does not contest that Asarco potentially has

a sufficient interest in the instant proceeding to warrant its intervention.[11]  In *Albert Inv.*, 585

---

[10]Asarco has pursued contribution claims against other parties at other CERCLA sites for which Asarco settled its liability to the United States in the Asarco bankruptcy.  Recently, the United States District Court for the District of Utah granted summary judgment against Asarco on one such contribution claim for the Richardson Flat Site located near Park City, Utah.  *Asarco, LLC v. Noranda Mining, Inc.*, Case No. 2:12-CV-527-TC-DBP, 2016 U.S. Lexis 41532 (D. Utah March 29, 2016).  There the court held that Asarco was judicially estopped from arguing that it had paid more than its fair share of response costs to the United States in its bankruptcy settlement because it had represented to the bankruptcy court, with specific factual statements, that its settlement payment represented its "fair share of liability at the Site."  *Id*. at *38-39.

[11] Nor does the United States contest that Asarco satisfies the other standards for intervention as of right – i.e., timeliness of Asarco's application, the instant case's potential to impair Asarco's right to seek contribution from

F.3d at 1392-99, the Tenth Circuit held that the potential CERCLA contribution claim of a non-settling potentially responsible party (PRP) is an interest legally sufficient to grant that PRP intervention as of right under Section 113(i) of CERCLA, 42 U.S.C. § 9613(i) and Fed. R. Civ. P. 24(a).[12]  The instant case differs from *Albert Inv.* in that Asarco is a prior settling party rather than a non-settling PRP, but the United States does not contest application of *Albert Inv.* in this case.[13]

> **B.     Even Where Intervention is Appropriate the Court May Impose Conditions or Restrictions to Minimize Delay**

While permitting intervention as of right, the Tenth Circuit in *Albert Inv.* also recognized that "intervention as of right 'may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.'" *Id.*, 585 F.3d at 1396 (quoting *San Juan County v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007) (*en banc*) and *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352-53 (5th Cir. 1997) ("It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right.").  For example, "[t]he district court has the ability to lessen any potential delay by denying discovery or by denying an evidentiary hearing." *Albert Inv.*, 585 F.3d at 1396 (citations omitted); *see also United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir.1997) (finding no abuse of discretion to deny evidentiary hearing for CERCLA intervenors where they "had ample opportunity to file objections to the Proposed Consent Decree" which were considered).

---

Defendants, or that Asarco's interest is not adequately represented by existing parties. *See Albert Inv.*, 585 F.3d at 1391.

[12] The standard for intervention as of right is the same under Section 113(i) of CERCLA and under Rule 24(a), the only difference being as to who bears the burden of demonstrating the adequacy or inadequacy of representation by existing parties of the movant's interest. Motion at 6-7 (citing *Albert Inv.*, 585 F.3d at 1392).

In practice, courts in analogous circumstances have often decided, consistently with the Tenth Circuit's suggestion in *Albert Inv.,* that intervenors could participate in a proceeding in a manner that protects intervenors' rights without permitting the intervenors to engage in discovery.  For example, in *United States v. Andruss Family Trust*, No. 07-6873, 2011 WL 1334391 (C.D. Cal.  Apr. 7, 2011), non-settling PRPs (who were permitted to intervene to oppose the entry of a proposed consent decree as a result of the Ninth Circuit's decision in *United States v. Aerojet General Corp.*, 606 F.3d 1142 (9th Cir. 2009) ) sought to conduct discovery.  Because allowing discovery "might delay settlement contrary to the interests embodied by CERCLA" the district court, citing *Albert Inv..*, denied intervenors' request.  2011 WL 1334391 at *2.  *See also Arizona v. City of Tucson,* 761 F.3d 1005, 1009 n.2 (9th Cir. 2014) (affirming district court's denial of discovery rights to intervenors as of right in a state CERCLA consent decree matter); *In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019, 1023 (D. Mass. 1989) (granting permissive intervention subject to conditions including that the intervenor "may not participate in discovery, the examination of witnesses, or the taking or contesting of evidence."); *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 519 (W.D. Mich. 1989) (denying discovery and hearing to amici who were non-settling parties with potential liability under CERCLA, so as not to subvert the purpose of the settlement agreement to avoid the costs of extended litigation by ordering a hearing on whether the settlement represents the percentage of responsibility that would be adjudicated against a party if the case were tried); *Dravo Corp. v. Zuber*, 804 F. Supp. 1182, 1187-88 (D. Neb. 1992) (denying discovery to plaintiff opposing CERCLA settlement between EPA and defendants where plaintiff sought to explore adequacy of basis for proposed settlement); *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 691-92 (S.D.N.Y. 1988) (discovery and evidentiary

hearing requested by third-party defendant objecting to CERCLA settlement were not necessary for court to determine whether to approve proposed settlement where terms involved only the payment of money rather than adequacy of response plans).

Similarly, courts have found that parties contesting a settlement have a fair opportunity to do so without the need for evidentiary hearings. *See Exxon*, 697 F. Supp. at 692. In *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085-86 (1st Cir. 1994), the First Circuit upheld the district court's denial of an evidentiary hearing before approving CERCLA consent decrees. The court of appeals explained that holding evidentiary hearings as a matter of course to review the reasonableness of CERCLA consent decrees "would frustrate the statutory objective of expeditious settlement. Consequently, requests for evidentiary hearings are, for the most part, routinely denied—and properly so—at the consent decree stage in environmental cases." *Id*. at 1085 (citations omitted). As noted, this principle has particular force where the dispute over the fairness of a proposed settlement involves its financial terms: "[E]videntiary hearings are not required under CERCLA when a court is merely deciding whether monetary settlements comprise fair and reasonable vehicles for disposition of Superfund claims." *Cannons Eng'g*, 899 F.2d at 94. An evidentiary hearing should not be granted if there is an affirmative answer to the question "given the nature and circumstances of the case, did the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions?" *Id*. If Asarco's participation is limited to filing briefs regarding the proposed settlement, Asarco will still be given fair opportunity to present relevant facts and arguments to the Court.

### C.      Asarco's Participation in This Case Should Be Limited to Filing Briefs Regarding the Proposed Settlement

Ultimately, this Court's consideration of the proposed settlement between the United States and Defendants turns on the Court's determination, with substantial deference to the United States' position, whether the Consent Decree is fair, reasonable, and consistent with the purposes of CERCLA.  *See, e.g., State of Colorado,* 937 F.2d 505 at 509 (the district court must determine whether the settlement is "fair. adequate and reasonable" and that it is "not illegal, a product of collusion, or against the public interest")*; Cannons Eng'g*, 899 F.2d at 84; *Akzo Coatings*, 949 F.2d at 1426; *In re Tutu Water Wells*, 326 F.3d at 207 (citations omitted).  The United States has no objection to Asarco's intervention in this case to argue its apparent view that the proposed Consent Decree does not meet these standards.  However, Asarco's participation for this purpose does not necessitate delaying consideration of the proposed consent decree with Defendants.

Unlike the issue before the Court in this proceeding, Asarco's right to contribution under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), turns on the "allocat[ion of] response costs among liable parties using such equitable factors as the court determines are appropriate."  A contribution proceeding would determine whether the respective equitable shares of Asarco and Defendants are such that Asarco is entitled to a recovery in contribution from Doe Run and NL.  Those issues need not be resolved by this Court, and this Court need not determine whether Asarco paid too much under its 2008 settlement with the United States, or whether any of the other defenses raised by Doe Run or NL Industries are valid.  Asarco can file its objections to the proposed Consent Decree and make its arguments known to the Court as to why it believes the settlement does not result in Doe Run and NL paying an appropriate amount to settle their liability at the Site without conducting discovery and causing undue delay and disruption.  If the

16

Court finds that the settlement should be entered under the applicable standards, then the issue of whether Asarco is entitled to contribution from Doe Run and NL is moot.

As courts in analogous circumstances have determined, Asarco's intervention in this matter can and should be subject to appropriate restrictions so that its participation is "for the limited purpose of challenging the proposed consent decree." *United States v. ExxonMobil Corp.*, 264 F.R.D. 242, 249 (N.D. W.Va. 2010).  Therefore, the United States urges that the Court condition Asarco's intervention as follows:

- If and when the United States files a Motion for Entry of the proposed Consent Decree, Asarco shall have 30 days in which to file a brief setting forth the grounds for its opposition to the proposed Consent Decree.  If Asarco files such a brief, the Plaintiffs and Defendants shall have thirty days to respond to Asarco's opposition.

- No evidentiary hearing or discovery regarding objections to the proposed Consent Decree will be conducted.

These conditions will provide Asarco with a full and fair opportunity to state its opposition to the proposed Consent Decree, without unduly delaying the consideration of the settlement, and without unduly increasing the risk that the parties to the proposed Consent Decree will be deprived of its benefits, including avoidance of the expense and burden of discovery and further litigation.  Should the United States proceed to move this Court to enter the Consent Decree, and should this Court do so, Asarco would retain its right to file an appeal.

By contrast, permitting discovery or allowing an evidentiary hearing would unnecessarily delay consideration of the proposed Consent Decree, and would be contrary to CERCLA's emphasis on swift settlements to maximize amounts available for cleanup and natural resource damages.  *See, e.g.*, *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 971 (9th Cir.

2013) ("Congress sought through CERCLA . . . to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation). It would also be inconsistent with the standard of review this Court ultimately will apply in considering, should the United States make such a motion, whether to approve the Consent Decree. If Asarco is allowed to intervene without appropriate limits on its role, its participation is likely to unduly delay the Court's consideration of any United States' motion, as Asarco seeks, contrary to the appropriate standard of review, to "second guess" the United States' determination that Defendants will be paying an appropriate sum to resolve their liability for response costs at the Site. *See Cannons Eng'g*, 899 F.2d at 84, 89-90; *Akzo Coatings*, 949 F.3d at 1424 (court should not rubberstamp agreement but also should not substitute its own judgment for that of the parties to the decree); *Tutu Water Wells*, 326 F.3d at 207 (deference owed to appropriate agencies' determination on how to apportion liability and, as long as not arbitrary, capricious or irrational, court is to uphold it whether or not court would have apportioned liability the same way).

Accordingly, the United States respectfully requests that the Court allow Asarco's intervention for the limited purpose of opposing the proposed Consent Decree, subject to the conditions that Asarco be granted neither discovery nor an evidentiary hearing concerning the Consent Decree.

### D. Asarco's Alternative Request for Permissive Intervention is Moot

In its Motion to Intervene, Asarco asserts permissive intervention under Fed. R. Civ. P. 24(b) as an alternate ground for intervention. Motion at 4, 10. This Court discussed the standards for permissive intervention in *Tierce v. The U.S. Baird Corp.*, No. 15-CV-0358, 2015 WL 4105476 (N.D. Okla. July 7, 2015) (allowing permissive intervention). The United States believes it will be unnecessary for the Court to address whether permissive intervention should

18

be granted because the United States does not contest that, under the law of this Circuit, a limited

intervention as of right may be granted.

## V.     CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court

enter the proposed order allowing Asarco to intervene under the specified conditions.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


 s/ Samuel D. Blesi                                   
SAMUEL D. BLESI
Trial Attorney
D.C. Bar # 417818
KENNETH G. LONG
Senior Attorney
D.C. Bar # 414791
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-1466
Sam.Blesi@usdoj.gov
Kenneth.Long@usdoj.gov



DANNY C. WILLIAMS, SR.
United States Attorney
Northern District of Oklahoma

CATHRYN D. McCLANAHAN, OBA No. 14853
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov

OF COUNSEL:

JAMES E. COSTELLO
Practice Group Leader
Superfund Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave, Suite 1200
Dallas, TX 75202-2733
costello.james@epa.gov

**Certificate of Service**

I hereby certify that on April 18, 2016, I electronically filed the UNITED STATES' RESPONSE TO MOTION TO INTERVENE BY ASARCO LLC using the ECF System for filing.

I hereby further certify that on this same date I caused to be served the UNITED STATES' RESPONSE TO MOTION TO INTERVENE BY ASARCO LLC by U.S. first class mail on the following attorneys, who are not registered participants of the ECF System, at the following addresses:

Richard Ahrens
Lewis Rice
600 Washington Ave.
Suite 2500
St. Louis, MO 63101

Chris Gibson
Archer and Greiner P.C.
One Centennial Square
Haddonfield, NJ 08033

s/ Samuel D. Blesi
Samuel D. Blesi