**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|                                           |     |                               |
|-------------------------------------------|-----|-------------------------------|
| **UNITED STATES OF AMERICA**              | )   |                               |
| **and STATE OF OKLAHOMA,**                | )   |                               |
|                                           | )   |                               |
|                                           | )   |                               |
| **Plaintiffs,**                           | )   |                               |
|                                           | )   | **Case No. 15-CV-0663-CVE-JFJ** |
| **v.**                                    | )   |                               |
|                                           | )   |                               |
| **THE DOE RUN RESOURCES**                 | )   |                               |
| **CORPORATION  and**                      | )   |                               |
| **NL INDUSTRIES, INC.,**                  | )   |                               |
|                                           | )   |                               |
| **Defendants.**                           | )   |                               |

**<u>CONSENT DECREE FOR CASHOUT OF OPERABLE UNITS 2, 4, AND 5 OF
THE TAR CREEK SUPERFUND SITE, OTTAWA COUNTY, OKLAHOMA</u>**

TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................................... 1

II.     JURISDICTION .......................................................................................................... 2

III.    PARTIES BOUND ...................................................................................................... 3

IV.     DEFINITIONS............................................................................................................. 3

V.      STATEMENT OF PURPOSE ..................................................................................... 8

VI.     PAYMENT OF RESPONSE COSTS.......................................................................... 8

VII.    FAILURE TO COMPLY WITH CONSENT DECREE ............................................ 12

VIII.   COVENANTS BY PLAINTIFFS.............................................................................. 15

IX.     RESERVATION OF RIGHTS BY THE UNITED STATES AND STATE OF
        OKLAHOMA ............................................................................................................ 17

X.      COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL
        AGENCY ................................................................................................................... 21

XI.     EFFECT OF SETTLEMENT/CONTRIBUTION ..................................................... 23

XII.    NOTICES AND SUBMISSIONS.............................................................................. 26

XIII.   RETENTION OF JURISDICTION ........................................................................... 28

XIV.    INTEGRATION/APPENDICES AND MODIFICATION ......................................... 28

XV.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ............................... 29

XVI.    SIGNATORIES/SERVICE........................................................................................ 29

XVII.   FINAL JUDGMENT ................................................................................................. 30

## I.      BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Oklahoma (the State") filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.      The United States in the complaint seeks, inter alia: payment by the Settling Defendants (The Doe Run Resources Corporation and NL Industries, Inc.) of certain costs paid or to be paid by EPA, ATSDR and the Department of Justice ("DOJ") for response actions at Operable Units ("OU") 2, 4, and 5 of the Tar Creek Superfund Site (the "Site") in Ottawa County, Oklahoma, together with accrued interest consistent with the National Hazardous Substances and Oil Pollution Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Oklahoma on December 15, 2011, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In the complaint, filed jointly by the United States and the State, the State asserts that the Settling Defendants are liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and alleges that the Settling Defendants are liable to the State under 27A Okla. Stat. § 1-3-101(8)(1) for past and future response costs at OU2, OU4 and OU5.

E.      The Settling Defendants that have entered into this Consent Decree do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

1

Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by Settling Defendants or any claim by the State.

F.      In response to the release or threatened release of  hazardous substances at or from the Site, EPA undertook response actions at the Site, including OU2, OU4, and OU5, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future.

G.      In performing response actions at the Site, EPA and the State have incurred response costs and will incur additional response costs in the future.

H.      The United States and the State allege that Settling Defendants are responsible parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and are jointly and severally liable for response costs incurred and to be incurred at the Site.

I.      The United States, the State, and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

II.    JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b) and also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that Settling

2

Defendants may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

III.   PARTIES BOUND

2.     This Consent Decree is binding upon the United States and the State, and upon Settling Defendants and Settling Defendants' successors, and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

IV.   DEFINITIONS

3.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply:

"Appendix A Property" shall mean the property described on the map that is Appendix A.

"Appendix B Property" shall mean the property described on the map that is Appendix B.

"Appendix F Property" shall mean the property described on the map that is Appendix F.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

Except as otherwise provided herein, "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first as recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"Operable Unit 2" or "OU2," as used in this Consent Decree, shall mean the residential areas of the Site which were or are now contaminated with mining and milling wastes and which have been remediated or which will be remediated in the future under

4

EPA's August 27, 1997, Record of Decision (including any later modification thereof or other decision document) and under various removal actions that generally predate the 1997 Record of Decision. OU2 only includes the approximately 3,000 residential yards that were excavated and backfilled with clean soil, any residential areas of the Site that will be remediated in the future as described above, and the repositories built to hold the excavated contaminated soil.

"Operable Unit 4" or "OU4," as used in this Consent Decree, shall mean a certain portion of the Tar Creek Superfund Site. OU4 is generally depicted in Figure 1 of the Record of Decision for Operable Unit 4 of the Tar Creek Superfund Site (February 20, 2008). OU4 includes the parts of the Site (both urban and rural) that are not currently used for residential purposes or which are sparsely used for residential purposes, where mine and mill wastes and smelter waste have been deposited, stored, disposed of, placed, or otherwise come to be located.

"Operable Unit 5" or "OU5," as used in this Consent Decree shall mean the operable unit that addresses contaminated sediment in Elm Creek from its source on the Kansas Border to the Neosho River, in Tar Creek starting at the confluence of Tar Creek and Lytle Creek then downstream in Tar Creek to Tar Creek's confluence with the Neosho River, and in the Neosho River downstream to the lake-head delta at Grand Lake.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain and monitor the effectiveness of the Operable Unit 4 Remedial Action.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

5

"Parties" shall mean the United States, the State of Oklahoma, and Settling Defendants.

"Plaintiffs" shall mean the United States and the State.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992, also known as the Resource Conservation and Recovery Act.

"Record of Decision" or "ROD" shall mean the EPA *Record of Decision Operable Unit 4 Chat Piles, Other Mine and Mill Waste, and Smelter Waste, Tar Creek Superfund Site, OU4* signed on February 20, 2008, by the Superfund Division Director, EPA Region 6, including all attachments thereto, and also including the EPA Explanation of Significant Differences ("ESD") for the OU4 ROD dated April 13, 2010, and any future amendments, or ESDs related to the ROD.

"Remedial Action" shall mean the remedial action selected in the ROD.

"Restricted Parcels" shall mean any Site property held in whole or in part in trust for the benefit of a tribe or individual Indians, or held in whole or in part by a Tribe or individual Indians subject to a restriction on alienation pursuant to Federal Law.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean The Doe Run Resources Corporation and NL Industries, Inc.

"Settling Federal Agency" shall mean the U.S. Department of the Interior including its agencies and bureaus (*e.g.*, the Bureau of Land Management, the Bureau of Indian Affairs, and the Fish and Wildlife Service) and its successor departments, agencies, or instrumentalities.

"Site" shall mean the Tar Creek Superfund Site. The Site is the Oklahoma portion of the Tri-State Mining District that consists of the areas of Ottawa County impacted by mining waste.  The Site includes all of the area (approximately 40 square miles) in northern Ottawa County where lead and zinc mining operations were conducted and any area where a hazardous substance from mining or milling in Ottawa County has been stored or disposed. The Site also includes all suitable areas in close proximity to the contamination necessary for implementation of the response action.  The Site is generally bounded by the State of Kansas to the north.  The principal Site communities include Cardin (residents relocated under 2008 ROD), Commerce, North Miami, Picher (residents relocated under 2008 ROD), and Quapaw, Oklahoma and Treece, Kansas (residents relocated under 2010 ESD).  The Site is generally described on the map that is Appendix C.

"State Past Response Costs relating to Operable Unit 5 of the Site" shall mean all costs, including, but not limited to, direct and indirect costs, that the State paid at or in connection with OU5 of the Site through the Effective Date, plus Interest on all such costs that has accrued through the Effective Date.

"Tar Creek Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA,

42 U.S.C.§ 6903(27);  (4) any "pollutant" under 27A O.S. § 1-1-201(9); (5) any "hazardous

waste" under 27A O.S. § 2-7-103(9); (6) any "non-hazardous industrial solid waste" under  27A

O.S. § 2-10-103(12); and (7)  any "solid waste" under 27A O.S. § 2-10-103(16).

## V.      STATEMENT OF PURPOSE

4.      By entering into this Consent Decree, the mutual objective of the Parties is for

Settling Defendants to make cash payments, which include a premium, and are computed taking

into an account a negotiated share of responsibility attributed to the Settling Federal Agency and

paid by it to EPA, to resolve Settling Defendants' alleged civil liability to the United States and

the State with regard to the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and

9607, under Section 7003 of RCRA, 42 U.S.C. § 6973, and similar State laws as provided in the

Covenants by Plaintiffs in Section VIII, subject to the Reservations of Rights by Plaintiffs in

Section IX.

## VI.     PAYMENT OF RESPONSE COSTS

5.      <u>Settling Defendants' Payments to EPA.</u>

a.      The Doe Run Resources Corporation shall pay to EPA $3,433,137 forty-

five days from the Effective Date, on which no interest shall be due except as provided in

Paragraph 8.

b.      NL Industries, Inc. shall pay to EPA $6,603,590 in three payments plus

Interest as provided in this Consent Decree.  Each payment, except for the first, on which no

Interest shall be due except as provided in Paragraph 8, shall include the principal amount due

plus an additional sum for accrued Interest on the declining balance calculated from the Effective

Date.  NL Industries, Inc. shall pay $3,000,000 as NL Industries, Inc.'s first payment 30 days

from the Effective Date.  NL Industries, Inc. shall pay $2,000,000 plus Interest as NL Industries,

Inc.'s second payment on or before the first anniversary of the Effective Date.  NL Industries,

Inc. shall pay $1,603,590 plus Interest as NL Industries, Inc.'s third payment on or before the

second anniversary of the Effective Date.

                        c.     Payments by Settling Defendants to EPA shall be made at

https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions

that shall be provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the

United States Attorney's Office for the Northern District of Oklahoma The payment instructions

provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number,

which shall be used to identify all payments required to be made in accordance with this Consent

Decree.  The FLU shall provide the payment instructions to:

       For The Doe Run Resources Corporation:

       Mark R. Yingling
       Vice President – Environmental, Health & Safety
       1801 Park 270 Drive
       Suite 300
       St. Louis, MO 63146
       (314) 453-7658


       For NL Industries, Inc.:

       Courtney J. Riley
       5430 LBJ Freeway
       Suite 1700
       Dallas, Texas 75240-2697
       972-448-1466
       criley@valhi.net

Each Settling Defendant may change the individuals to receive payment instructions on the

Settling Defendant's behalf by providing written notice of such change to DOJ and EPA in

accordance with Section XII (Notices and Submissions).

      d.     At the time a Settling Defendant makes a payment, the Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XII (Notices and Submissions), and by email to EPA and DOJ at acctsreceivable.cinwd@epa.gov and EESCaseManagement.ENRD@usdoj.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268 and
>
> EES Case Management Unit
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611 Ben Franklin Station
> Washington, DC 20044-7611
> Re: DOJ No. 90-11-2-330/2

Such notice shall reference the CDCS Number, Site/Spill ID Number 06JW, and DOJ case number 90-11-2-330/2.

      e.     All amounts to be paid pursuant to Paragraph 5 shall be deposited by EPA in the Tar Creek Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      6.     <u>Settling Defendants' Payments to the State.</u>

      a.     The Doe Run Resources Corporation shall pay to the State $62,000 forty-five days from the Effective Date.

      b.     NL Industries, Inc. shall pay to the State $225,000 forty-five days from the Effective Date.

      c.     Payments by Settling Defendants to the State shall be made as follows: Payment by check made payable to the Oklahoma Department of Environmental Quality.  Mail

to:  Clayton Eubanks, Oklahoma Attorney General's Office, 313 N.E. 21st Street Oklahoma City, Oklahoma 73015.

       7.    <u>Payments by Settling Federal Agency</u>.  As soon as reasonably practicable after the Effective Date, the United States, on behalf of Settling Federal Agency, shall:

       a.    Pay to EPA $5,000,000.  The total amount to be paid on behalf of Settling Federal Agency pursuant to this Paragraph shall be deposited by EPA in the Tar Creek Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

       b.    <u>Interest</u>.  In the event that any payment required by Paragraph 7 (Payments by Settling Federal Agency) is not made within 120 days after the Effective Date, the United States on behalf of Settling Federal Agency shall pay Interest on the unpaid balance at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with such Interest commencing on the 121st day after the Effective Date and accruing through the date of the payment.

       c.    The Parties to this Consent Decree recognize and acknowledge that the payment obligations of Settling Federal Agency under this Consent Decree can only be paid from appropriated funds legally available for such purpose.  Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

VII.    FAILURE TO COMPLY WITH CONSENT DECREE

8.      <u>Interest on Late Payments</u>.  If a Settling Defendant fails to make any payment required by Paragraph 5 (Settling Defendants' Payments to EPA) or required by Paragraph 6 (Settling Defendants' Payments to the State) by the required due dates, all of that Settling Defendant's remaining installment payments, to the EPA or to the State as the case may be, and all accrued Interest on such payments shall become immediately due to EPA for late payments associated with Paragraph 5, or to the State for late payments associated with Paragraph 6, provided that the Settling Defendant fails to cure by remitting payment plus all accrued Interest on such payment within ten (10) days after receipt by the Settling Defendant of notice from EPA or the State that a required payment was not received.  If the first payment to EPA or to the State is not timely made, Interest on the untimely payment shall accrue from the Effective Date. Interest shall continue to accrue on any unpaid amounts until the total amount due including accrued Interest has been received by the EPA for payments associated with Paragraph 5 or by the State for payments associated with Paragraph 6.

9.      <u>Stipulated Penalties</u>.

a.      If a Settling Defendant fails to pay any amounts due under Paragraph 5 (Settling Defendants' Payments to EPA) or due under Paragraph 6 (Settling Defendants' Payments to the State) by the required due date, that Settling Defendant shall be in violation of this Consent Decree and shall pay a stipulated penalty of $900 per violation per day that such payment is late.  The Settling Defendant shall pay stipulated penalties in addition to the Interest required by Paragraph 8.  Settling Defendants shall pay stipulated penalties to the EPA for failing to comply with Paragraph 5 (Settling Defendants' Payments to EPA).  Settling Defendants shall

12

pay stipulated penalties to the State for failing to comply with Paragraph 6 (Settling Defendants' Payments to the State).

        b.      A Settling Defendant's stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by EPA or the State.

        c.      <u>Instructions for payment of Stipulated Penalties to EPA.</u>  A Settling Defendant shall identify all payments to EPA under this Paragraph as "stipulated penalties" and the Settling Defendant shall make these payments by Fedwire Electronic Funds Transfer to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York, NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

and the Settling Defendant's payments shall reference the CDCS Number, Site/Spill ID Number 06JW, and DOJ Case Number 90-11-2-330/2.   At the time of payment to EPA, the Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XII (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at cinwd_acctsreceivable@epa.gov or by mail to:

> EPA Cincinnati Finance Office
> 26 W. Martin Luther King Drive
> Cincinnati, Ohio 45268

Such notice shall reference the CDCS Number, Site/Spill ID Number 06JW, and DOJ Case Number 90-11-2-330/2.

        d.      <u>Instructions for payment of Stipulated Penalties to the State.</u>  A Settling Defendant shall identify all payments to the State under this Paragraph as "stipulated penalties"

and the Settling Defendant shall make these payments by check made payable to the Oklahoma Department of Environmental Quality.   Mail to:   Clayton Eubanks, Oklahoma Attorney General's Office, 313 N.E. 21st Street Oklahoma City, Oklahoma 73015.

e.    Stipulated penalties shall accrue as provided in this Paragraph regardless of whether EPA or the State has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand by EPA for penalties associated with Paragraph 5 (Settling Defendants' Payments to EPA) or upon demand by the State for penalties associated with Paragraph 6 (Settling Defendants' Payments to the State).   All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

10.    If the United States or the State brings an action to enforce this Consent Decree against a Settling Defendant, the Settling Defendant named in that action shall reimburse the United States or the State, for all costs of such action, including but not limited to costs of attorney time.   That is, the Settling Defendants shall reimburse the United States for the costs it incurs, and the Settling Defendants shall reimburse the State for costs it incurs.

11.    Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of a Settling Defendant's failure to comply with the requirements of this Consent Decree.

12.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties due to EPA that have accrued pursuant to this Consent Decree.   Notwithstanding any other provision of this Section, the State may, in its unreviewable discretion, waive payment of any portion of the

stipulated penalties due to the State that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse a Settling Defendant from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

VIII.   COVENANTS BY PLAINTIFFS

13.   <u>Covenants for Settling Defendants by United States</u>.  In consideration of the payments that will be made by each Settling Defendant under this Consent Decree, and except as specifically provided in Section IX (Reservation of Rights by the United States and State of Oklahoma), the United States covenants not to sue or to take administrative action against a Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a) and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to Operable Unit 2, Operable Unit 4 and Operable Unit 5 of the Site.  These covenants shall take effect upon the Effective Date.  These covenants as to each Settling Defendant are conditioned upon the satisfactory performance by that Settling Defendant of its obligations under this Consent Decree.  These covenants extend only to each Settling Defendant and do not extend to any other person.

14.   <u>Covenants for Settling Federal Agency by EPA</u>.  In consideration of the payments that will be made by the United States on behalf of the Settling Federal Agency under the terms of the Consent Decree, and except as specifically provided in Section IX (Reservation of Rights by the United States and State of Oklahoma), EPA covenants not to take administrative action against Settling Federal Agency pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to Operable Unit 2, Operable Unit 4 and Operable Unit 5 of the Site.  These covenants shall take effect upon the Effective Date.  EPA's covenants described in this Paragraph 14 are conditioned upon the satisfactory performance by the United States on behalf of the Settling Federal Agency of its

15

obligations under this Consent Decree.  EPA's covenant extends only to Settling Federal Agency and does not extend to any other person.

15.     <u>Covenants for Settling Defendants by the State of Oklahoma</u>.  In consideration of the payments that will be made by each Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Section IX (Reservation of Rights by the United States and State of Oklahoma), the State covenants not to sue or to take administrative action against a Settling Defendant pursuant to 27A O.S. § 1-3-101(B)(10), § 2-3-506, § 2-6-105, and 50 O.S. § 5, Section 7002 of RCRA and Section 107(a) of CERCLA relating to Operable Unit 2, Operable Unit 4 and Operable Unit 5 of the Site. These covenants shall take place upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by the Settling Defendant of the Settling Defendant's obligations under this Consent Decree.  These covenants extend only to each Settling Defendant and do not extend to any other person.

16.     <u>Covenants for Settling Federal Agency by the State of Oklahoma.</u>   In consideration of the payments that will be made by the United States to EPA on behalf of the Settling Federal Agency under the terms of the Consent Decree, and except as specifically provided in Section IX (Reservation of Rights by the United States and State of Oklahoma), the State covenants not to sue or to take administrative action against Settling Federal Agency pursuant to 27A O.S.§ 1-3-101(B)(10), § 2-3-506, § 2-6-105, and 50 O.S. § 5, Section 7002 of RCRA and Section 107(a) of CERCLA relating to Operable Unit 2, Operable Unit 4 and Operable Unit 5 of the Site.  These covenants shall take effect upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by the United States of its obligations on behalf of the Settling Federal Agency under this Consent Decree.  These covenants extend only to the Settling Federal Agency and do not extend to any other person.

IX.   RESERVATION  OF  RIGHTS  BY  THE  UNITED  STATES  AND  STATE  OF
OKLAHOMA

> 17.   United States' and the State of Oklahoma's Reservations Relating to OU4
> with Respect to Settling Defendants.

Notwithstanding  any  other  provision  of  this  Consent  Decree,  the  United  States  and  the

State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings

in this action or in a new action, or to issue an administrative order seeking to compel The Doe

Run  Resources  Corporation  with  respect  to  the  Appendix  A  Property  and  NL  Industries,  Inc.

with respect to the Appendix B Property to perform further response actions relating to OU4, or

to reimburse the United States and/or the State for additional costs of response actions relating to

OU4, if, subsequent to lodging of this Consent Decree pursuant to Paragraph 39,

> a.   conditions previously unknown to EPA and/or the State are discovered; or

> b.   information, previously unknown to EPA and/or the State, is received, in

whole or in part; and

EPA  determines  that  these  previously  unknown  conditions  or  information  together  with  any

other relevant information indicate that the Remedial Action at the Appendix A Property or the

Appendix B Property is not protective of human health or the environment.  No Party will be

required  to  perform  any  O&M  regardless  of  whether  the  O&M  is  related  to  the  Appendix  A

Property or the Appendix B Property.

> 18.   EPA's and the State of Oklahoma's Reservations Relating to OU4 with
> Respect to Settling Federal Agency.

Notwithstanding  any  other  provision  of  this  Consent  Decree,  EPA  and  the  State  of

Oklahoma  reserve,  and  this  Consent  Decree  is  without  prejudice  to,  the  right  to  issue  an

17

administrative order seeking to compel Settling Federal Agency, with respect to the Restricted Parcels within the Appendix A Property, the Appendix B Property or the Appendix F Property, to perform further response actions relating to OU4, or to reimburse EPA and/or the State for additional costs of response actions relating to OU4, if, subsequent to lodging of this Consent Decree pursuant to Paragraph 39,

       a.    conditions at these Restricted Parcels, previously unknown to EPA and/or the State, are discovered; or

       b.    information, previously unknown to EPA and/or the State, is received, in whole or in part; and

EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action at the Restricted Parcels on the Appendix A Property, the Appendix B Property or the Appendix F Property is not protective of human health or the environment.  The Settling Federal Agency will not be required to perform any O&M regardless of whether the O&M is related to the Appendix A Property, the Appendix B Property or the Appendix F Property.

19.    For purposes of Paragraph 17 and 18, the information and the conditions known to EPA and/or the State shall include only that information and those conditions known to EPA and/or the State as of the date the Consent Decree is lodged in federal court pursuant to Paragraph 39 and set forth in the OU4 ROD, the administrative record supporting the OU4 ROD, or the OU4 post-ROD administrative record as of the date of lodging.  The entire OU4 post-ROD administrative record as of the date of lodging consists of the documents and information listed in Appendix D, which is further evidenced by digital versatile disk (DVD) "D" provided to Settling Defendants on November 5, 2014.

18

20.   <u>United States' and the State of Oklahoma's Reservations Relating to OU5 with Respect to Settling Defendants.</u>

Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel The Doe Run Resources Corporation with respect to the Appendix A Property and NL Industries, Inc. with respect to the Appendix B Property to perform further response actions relating to OU5, or to reimburse the United States and/or the State for additional costs of response actions relating to OU5, if, subsequent to lodging of this Consent Decree pursuant to Paragraph 39,

a.   conditions previously unknown to EPA and/or the State are discovered; or

b.   information, previously unknown to EPA and/or the State, is received, in whole or in part; and

EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Appendix A Property or the Appendix B Property contributed hazardous substances or Waste Material to OU5 in a greater amount, or of greater toxic or other hazardous effect, than is previously known to EPA and/or the State.

21.   <u>EPA's and the State of Oklahoma's Reservations Relating to OU5 with Respect to Settling Federal Agency.</u>

Notwithstanding any other provision of this Consent Decree, EPA and the State reserve, and this Consent Decree is without prejudice to, the right to issue an administrative order seeking to compel Settling Federal Agency with respect to the Restricted Parcels within the Appendix A Property, the Appendix B Property or the Appendix F Property, to perform further response actions relating to OU5, or to reimburse EPA and/or the State for additional costs of response

actions relating to OU5, if, subsequent to lodging of this Consent Decree pursuant to Paragraph 39,

      a.    conditions at these Restricted Parcels, previously unknown to EPA and/or the State are discovered; or

      b.    information, previously unknown to EPA and/or the State, is received, in whole or in part; and

EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Restricted Parcels on the Appendix A Property, the Appendix B Property, or the Appendix F Property contributed hazardous substances or Waste Material to OU5 in a greater amount, or of greater toxic or other hazardous effect, than is previously known to EPA and/or the State.

22.    For purposes of Paragraph 20 and 21, the information and the conditions known to EPA and/or the State shall include only that information and those conditions known to EPA and/or the State as of the date the Consent Decree is lodged in federal court pursuant to Paragraph 39 and set forth in the OU4 documents described in Paragraph 19 or set forth in the administrative record file for OU5 as of the date of lodging.  The administrative record file for OU5 as of the date of lodging consists of the documents listed in Appendix E, which are further evidenced by DVD "E" provided to Settling Defendants on November 5, 2014.

23.    <u>General Reservations of Rights by the United States and the State.</u>  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against any Settling Defendant, and against the Settling Federal Agency, with respect to all matters not expressly included within Plaintiffs' covenants.  Notwithstanding any other provision of this

Consent Decree, the United States and the State reserve all rights against any Settling Defendant, and the Settling Federal Agency, with respect to:

a.      liability for failure by a Settling Defendant or the Settling Federal Agency to meet a requirement of this Consent Decree;

b.      criminal liability;

c.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d.      liability based on the ownership or operation of the Site by a Settling Defendant or by Settling Federal Agency when such ownership or operation commences after signature of this Consent Decree by a Settling Defendant or by Settling Federal Agency;

e.      liability based on a Settling Defendant's or Settling Federal Agency's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendants or Settling Federal Agency; and

f.      liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

X.      COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCY

24.      Except as provided in Paragraph 26, each Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to Operable Unit 2, Operable Unit 4 and Operable Unit 5 of the Site and this Consent Decree, including but not limited to:

21

a.      any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.      any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Oklahoma State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; or

c.      any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law relating to the Site.

25.      <u>Covenant by Settling Federal Agency</u>.  Settling Federal Agency agrees not to assert any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, or 113, or any other provision of law with respect to Operable Unit 2, Operable Unit 4, and Operable Unit 5 of the Site and this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

26.      Except as provided in Paragraph 28 (Claims Against Other Potentially Responsible Parties) and Paragraph 34 (Res Judicata and Other Defenses), the covenants in this Section X shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to any of the reservations in Section IX (Reservations of Rights by Plaintiffs), other than in Paragraph 23.a (liability for failure to meet a requirement of the Consent Decree) or 23.b (criminal liability), but only to the extent that Settling Defendants' claims arise

22

from the same response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

27. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

28. <u>Claims Against Other Potentially Responsible Parties.</u> Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that a Settling Defendant may have for response costs relating to Operable Unit 2, Operable Unit 4, and Operable Unit 5 of the Site against any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendants may have against any person if such person asserts a claim or cause of action relating to Operable Unit 2, Operable Unit 4, or Operable Unit 5 of the Site against such Settling Defendants. This waiver also shall not apply if the United States or the State, as applicable, brings a cause of action or issues an order to a Settling Defendant pursuant to the reservations of rights in Paragraphs 17 through 22 (United States Reservations relating to OU4 and OU5).

29. Settling Defendants do not own real property at the Site.

XI. EFFECT OF SETTLEMENT/CONTRIBUTION

30. Except as provided in Paragraph 28 (Claims Against Other Potentially Responsible Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by Settling Defendants and Settling Federal Agency), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of

CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

31.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant and Settling Federal Agency have, as of the Effective Date, resolved liability to the United States and the State within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with OU2, OU4, and OU5, by the United States, the State, or any other person; provided, however, that if the United States exercises rights under the reservations in Section IX (Reservations of Rights by Plaintiffs), other than in Paragraph 23.a (liability for failure to meet a requirement of the Consent Decree) or Paragraph 23.b (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

32.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaints filed by the United States and the State in this action are civil actions within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent

Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant and Settling Federal Agency has, as of the Effective Date, resolved liability to the United States and the State within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

33.     Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing no later than 60 days prior to the initiation of such suit or claim.  Each Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing within 10 days after service of the complaint or claim upon it.  In addition, each Settling Defendant shall notify EPA and DOJ and the State within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

34.     <u>Res Judicata and Other Defenses.</u>

In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendants (and with respect to a State Action, Settling Federal Agency) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section VIII.

XII.   NOTICES AND SUBMISSIONS

35.   Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to EPA, DOJ, the State, and Settling Defendants, respectively.

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-2-330/2

and

Chief, Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ# 90-11-6-16198/1


As to EPA:

Director, Superfund Division (6SF)
United States Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, TX 75202-2733,

and

Ms. Lydia Johnson (6SF-TE)
Superfund Enforcement Assessment Section Chief

United States Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, TX 75202-2733


As to the State:

Mr. Clayton Eubanks
Deputy Solicitor General
Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, Oklahoma 73013

Pam Dizikes
Attorney
Oklahoma Department of Environmental Quality
P.O. Box 1677
Oklahoma City, OK 73101-1677


As to The Doe Run Resources Corporation:

Mark Yingling
Vice President – Environmental, Health & Safety
The Doe Run Resources Corporation
1801 Park 270 Drive, Suite 300
St. Louis, MO 63146

As to NL Industries, Inc.:

Ms. Courtney J. Riley
NL Industries, Inc.
VP Environmental Affairs
5430 LBJ Freeway, Suite 1700
Dallas, Texas 75240

and

Mr. Christopher R. Gibson
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, NJ 08033

27

XIII.   RETENTION OF JURISDICTION

36.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

XIV.   INTEGRATION/APPENDICES AND MODIFICATION

37.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree.   The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.   The following appendices are attached to and incorporated into this Consent Decree:

a.    "Appendix A," "Appendix B," and "Appendix F" are each a map of certain Site lands, identified on the maps. These maps identify the Appendix A Property, the Appendix B Property, and the Appendix F Property, respectively.

b.    "Appendix C" is a map of the Site.

c.    "Appendix D" is the list of documents that are the OU4 Post-ROD Administrative Record as of the date of lodging.

d.    "Appendix E" is the list of documents that are the administrative record file for OU5 as of the date of lodging.

e.    "Appendix F" is a map of certain lands containing identified chat piles, chat bases, and fine tailings on OU4.

38.    Modifications to this Consent Decree shall be in writing, signed by the United States and the affected Settling Defendant, and shall be effective upon approval by the Court.

All modifications to the Consent Decree also shall be signed by the State, or a duly authorized representative of the State, as appropriate.

## XV.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

39.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

40.    If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVI.   SIGNATORIES/SERVICE

41.    The undersigned representatives of the Settling Defendants to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice each certify that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

42.    Settling Defendants agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

43.    Each Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Each Settling

Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.   The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

XVII.   FINAL JUDGMENT

44.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and Settling Defendants.

**IT IS SO ORDERED** this 28th day of September, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE